**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| INDIANA RAIL ROAD COMPANY, *et al.*, | ) |
| Plaintiffs, | ) No. 19-cv-06466 |
| v. | ) |
| | ) Judge Edmond E. Chang |
| ILLINOIS COMMERCE COMMISSION, *et al.* | ) |
| Defendants, | ) |
| and | ) |
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, *et al.*, | ) |
| Intervenor-Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

In August 2019, Illinois enacted a law that requires a minimum of two crew members in order to operate a freight train. Public Act 101-0294. A railroad and two railroad organizations filed this lawsuit against the Illinois Commerce Commission (known by its acronym, the ICC), which is the state agency that would otherwise enforce this minimum crew-size requirement. The Indiana Rail Road Company, the Association of American Railroads, and the American Short Line and Regional Railroad Association (together, referred to as the Railroads) contend that at least three federal laws preempt the Illinois law. R. 1, Compl. On the opposite side from the railroad industry, two Unions successfully sought to intervene to defend the state law

(referred to as the Crew Size Law for convenience's sake). R. 33, Int. Order.[1] All parties now move for summary judgment. *See* R. 49, Pls.' Mot. Summ. J.; R. 58, Int.'s Mot. Summ. J.; R. 66, Defs.' Mot. Summ. J. For the reasons discussed below, the railroad industry's motion for summary judgment is granted, and correspondingly the ICC's and Unions' motions are denied (except for one narrow claim).

## I. Background

The facts narrated here are undisputed unless otherwise noted. In deciding cross-motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). So, when the Court evaluates the ICC's and the Unions' summary judgment motions, the Railroads get the benefit of reasonable inferences; conversely, when evaluating the Railroads' filing, the Court gives the ICC and the Unions the benefit of the doubt.

The Indiana Rail Road Company operates a 250-mile regional railroad in central Illinois and southwest Indiana. R. 50, Pls.' Stmt. Fact (PSOF) ¶ 1; R. 65, Defs.' Stmt. Fact (DSOF) ¶ 1. It is a member of two railroad associations: the Association of American Railroads and the American Short Line and Regional Railroad Association. PSOF ¶¶ 7-9; R. 56, Int. Defs.' Counterstatement (ISOF) ¶¶ 7-8; DSOF ¶¶ 3-5. Back in March 2016, the Federal Railroad Administration (known by its acronym, the FRA) formally gave provided notice of proposed rules that would affect Indiana Rail Road

---

[1] Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation. The Court has federal-question subject matter jurisdiction under 28 U.S.C. § 1331 as well as supplemental jurisdiction over Plaintiffs' state-law claim pursuant to 28 U.S.C. § 1367.

as well as members of the two associations. FRA, *Train Crew Staffing*, 81 Fed. Reg. 13,918 (Mar. 15, 2016); PSOF ¶ 15; R. 64, Defs.' Resp. PSOF (DRSOF) ¶ 15. Specifically, the FRA issued a Notice of Proposed Rulemaking on "Train Crew Staffing," proposing regulations for minimum crew sizes for trains depending on the trains' type of operations. *Id*. In theory, the rulemaking should have finished up in 12 months, as required by the Federal Railroad Safety Act, 49 U.S.C. § 20103(b), and the FRA's own regulations, 49 C.F.R. § 211.13. But that did not happen, and instead the FRA ended up withdrawing the notice—three years later in May 2019. FRA, *Train Crew Staffing*, 84 Fed. Reg. 24,735, 24,741 (May 29, 2019) (FRA Withdrawal Order); PSOF ¶ 16; DRSOF ¶ 16. In withdrawing the proposed regulation, the FRA announced "that no regulation of train crew staffing is necessary or appropriate at this time and intends for the withdrawal to preempt all state laws attempting to regulate train crew staffing in any manner." FRA Withdrawal Order at 24,741; PSOF ¶ 16; DRSOF ¶ 16; ISOF ¶ 16.

As it happens, on May 21, 2019—just days before the FRA's withdrawal of the proposed rule-making—the Illinois General Assembly amended the Illinois Vehicle Code to mandate a minimum crew size of two: "No rail carrier shall operate or cause to operate a train or light engine used in connection with the movement of freight unless it has an operating crew of at least 2 individuals." P.A. 101-0294, § 2d; DSOF ¶ 13-14; R. 70, Pls.' Resp. to DSOF (PRSOF) ¶¶ 13-14. The asserted purpose of this law, which the parties call the Crew Size Law, was to "enhance public safety by establishing a minimum freight train operating crew size to address the transportation

3

of all freight." Crew Size Law, § 1. Following the May 21, 2019 enactment of the law, the Governor signed the Crew Size Law on August 9, 2019. DSOF ¶ 14; PRSOF ¶ 14.

A month after the Governor signed the law, the Indiana Rail Road brought this lawsuit against the Illinois Commerce Commission seeking declaratory and injunctive relief on grounds that: (1) the Crew Size Law is preempted by the Federal Railroad Safety Act; (2) the law is preempted by a federal statute known as the "3R Act"; (3) the law is preempted by the ICC Termination Act; and (4) the law is unenforceable under its own sunset provision. R. 1, Compl. Although the Crew Size Law was to take effect on January 1, 2020, the Illinois Commerce Commission agreed to stay its enforcement pending the resolution of this case. PSOF ¶¶ 18, 19; DRSOF ¶¶ 18, 19. After giving the parties a chance to confer on whether any discovery was needed (the answer was no), R. 33, the parties and the Intervenor-Unions filed cross-motions for summary judgment.

## II. Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility

determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

In moving for summary judgment, the Railroads contend that the Illinois Crew Size Law is preempted by the Federal Railroad Safety Act, the 3R Act, and the ICC Termination Act, and that it is unenforceable under the terms of its own sunset provision. Pls.' Mot. Summ. J. at 7, 10, 12-13. The ICC and the Unions of course say no preemption applies and, separately, that the Railroads have failed to state a claim against the ICC or its officials under 42 U.S.C. § 1983. Defs.' Mot. Summ. J.; Int.'s Mot. Summ. J. As explained next, because the Court concludes that the Federal Railroad Safety Act does preempt the Crew Size Law, there is no need to decide the other potential grounds to declare the law invalid.

### A. Federal Railroad Safety Act

The Railroads' primary argument is that the Federal Railroad Safety Act (FRSA) preempts the Crew Size Law. Under the FRSA, the States are permitted to

5

"adopt or continue in force a law, regulation, or order related to railroad safety" so long as the Federal Railroad Administration does not "prescribe[] a regulation or issue[] an *order covering* the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2) (emphasis added). For purposes of preemption under Section 20106, a federal regulation or order "covers" the subject matter of the state law if "the federal regulations substantially subsume the subject matter of the relevant state law." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993).

In this case, neither side seriously contests that the Crew Size Law's ban on one-man crews directly conflicts with the FRA's declaration, announced in the Withdrawal Order, that one-man crews are permitted. But the question is whether the Withdrawal Order can be considered an agency "order" in the first place under the FRSA's preemption provision, 49 U.S.C. § 20106(a)(2), and if so, whether the Withdrawal Order is valid.

On the first issue—whether the Withdrawal Order is an order under Section 20106—the Defendants assert that the Seventh Circuit has defined an "order" for these purposes as "a final disposition, whether affirmative, negative, injunctive, or declaratory in form, *other than rulemaking*." *Burlington N. & Santa Fe Ry. Co. v. Doyle*, 186 F.3d 790, 795 (7th Cir. 1999) (quoting 5 U.S.C. § 551(6)) (emphasis added) (cleaned up).[2] This definition of "order" is drawn from the Administrative Procedure Act (known by its well-worn acronym, the APA). *Id.* To the Defendant's way of

---

[2] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

6

thinking, under that definition, the Withdrawal Order was the result of *rulemaking*—albeit a conclusion of it—and thus does not qualify as an order under the APA.

The problem with this contention is that the language that the Defendants quote from *Doyle* is the Seventh Circuit's characterization of the *district court's* decision in that case to limit "order" to its definition in the APA; it is *not* the holding of the Seventh Circuit decision. To the contrary, the Seventh Circuit explained that it "need not decide whether an action that does not fit [the APA definition] could nonetheless be an order under § 20106." *Id.* Instead, "[f]or preemption, the important thing is that the FRA considered a subject matter and made a decision regarding it. *The particular form of the decision is not dispositive.*" *Id.* at 795-96 (emphasis added). With substance elevated over form, here the answer is clear: the FRA considered a subject matter and made a decision on it. The FRA issued a notice of proposed rulemaking on crew-size regulation; received almost 1,600 comments on the subject; held a public hearing to discuss it; and issued a withdrawal notice explaining its decision not to dictate a minimum crew size. So the FRA considered the subject of a crew-size minimum, decided not to impose one, and indeed decided to preempt any state-law attempts to do so. 84 Fed. Reg. at 24,736. Under *Doyle*, the FRA Withdrawal Order qualifies as an "order" under Section 20106 with preemptive effect.

But the ICC and the Unions have a backup argument: even if a withdrawal notice can be considered an order for purposes of preemption under the FRA, *this* particular notice has no preemptive effect because the Withdrawal Order itself is invalid. *See Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 158 (1978) (explaining that a

federal statute or regulation must be valid in order to preempt a state statute). In support of this invalidity contention, the Defendants rely on the Withdrawal Order's failure to meet the 12-month statutory time limit for rulemaking; the FRA's decision not to allow a second round of notice and comment before ending the proposed rulemaking; its purported bar on State laws that would account for local hazards; and its arbitrary and capricious (in the defense's view) dismissal of prior FRA safety studies without real explanation. Defs.' Mot. Summ. J.

Whatever the merits of these arguments on the Withdrawal Order's invalidity, this is not the right forum to present them. Under a federal law known as the Hobbs Act, this Court cannot entertain these challenges to the validity of the Withdrawal Order, because the federal Courts of Appeals have exclusive jurisdiction over them. Specifically, the Hobbs Act confers on the Courts of Appeals the "*exclusive* jurisdiction to enjoin, set aside, suspend (in whole or in part), or to *determine the validity of* … all final agency actions described in section 20114(c) of title 49." 28 U.S.C. § 2342(7) (emphases added). Section 20114(c) in turn requires that "a proceeding to review a final action of the Secretary of Transportation under this part … shall be brought in the appropriate court of appeals …" 49 U.S.C. § 20114(c). In the multi-layered labyrinth of the United States Code, the reference to "this part" is to Part A (Safety) of Subtitle V (Rail Programs) of Title 49 (Transportation). Here, the Withdrawal Order was issued under 49 U.S.C. § 20103, *see* 84 Fed. Reg. 24,735 n.1, which is indeed in the

same part of the Code as Section 20114(c). So the Hobbs Act vests exclusive jurisdiction over the determination of the validity of the Withdrawal Order.[3]

Indeed, multiple challenges to the Withdrawal Order's validity are already well under way in a consolidated action in the Ninth Circuit.[4] In the meantime, without an appellate decision on the Withdrawal Order's validity, the Seventh Circuit instructs that district courts must presume the agency actions are "valid." *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 449 (7th Cir. 2010). In response, the ICC and the Unions rely on *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2055 (2019), to argue that the Hobbs Act does not apply here. But they cannot place much reliance on the opinion, because all it did was remand the case to the lower courts in order to address two "preliminary issues." *Id.* at 2053. One preliminary issue was whether the agency order at issue in that case was merely a non-binding "interpretive rule." *Id.* at 2055. But here the FRA was not merely advising "the public of the agency's construction of the statutes and rules which it administers." *Id.* As explained earlier, the Federal Railroad Safety Act authorizes the FRA to "prescribe[] a regulation or issue[] an order covering" railroad safety and gives those regulations and orders preemptive effect. 49 U.S.C. § 20106(a)(2). That is what the Withdrawal Order did—the order is not merely interpreting another statute or

---

[3] The ICC and the Unions profess that they are not seeking to deem the Withdrawal Order invalid, because they are just the defendants in the case. But that distinction makes no difference because the Hobbs Act vests exclusive jurisdiction in the federal appellate courts even just to "determine the validity" of the specified agency orders. 28 U.S.C. § 2342(7). The Court would be doing exactly that if it were to hold that the Withdrawal Order is not valid on the road to holding that the Order thus had no preemptive effect.

[4] *Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers v. FRA*, Nos. 19-71787, 19-71802, 19-71916, 19-71918 (9th Cir.).

9

regulation, it *is* the order with primary effect. The ICC's argument otherwise—that the FRA was interpreting the scope of its own authority—would turn *every* agency action into a mere interpretive rule.

The second preliminary issue identified by *PDR Network* is whether the plaintiff challenging the agency order in that case had a "prior" and "adequate" opportunity to seek judicial review of the agency's order. 139 S. Ct. at 2055-56. That was an important question because the Administrative Procedure Act, which ordinarily allows for judicial review of agency action, defers to exclusive-jurisdiction provisions—like those of the Hobbs Act—so long as those provisions give the plaintiff a "prior" and "adequate" opportunity for judicial review. *Id.* (citing 5 U.S.C. § 703). Here, the ICC and the Unions do not argue that they somehow were unable to file a Hobbs Act petition for review in a Court of Appeals. Indeed, the Crew Size Law was passed by the Illinois General Assembly on May 21, 2019, and a little over a week later, on May 29, the FRA issued the Withdrawal Order. Neither the ICC nor the Unions contend that they would not have qualified as an "aggrieved" party under the Hobbs Act, 28 U.S.C. § 2344, and thus be eligible to challenge the Withdrawal Order in a Court of Appeals. Given that the FRA had just stopped legislation in its tracks from being effective even if the Governor signed it, and given that the Unions have a paramount interest in railroad-worker safety, it is difficult to imagine more aggrieved parties. So this second preliminary issue identified by *PDR Network* is no help to the ICC or to the Unions.

With no other obstacles in the way of applying the Hobbs Act's exclusive-jurisdiction provision, and given the mandatory presumption of validity at this time, the

10

Withdrawal Order preempts the Crew Size Law. It is worth noting that if the Ninth Circuit later holds that the FRA Withdrawal Order is invalid, then the Illinois Commerce Commission may move to vacate the judgment.

### B. Eleventh Amendment and 42 U.S.C. § 1983

For their part, the Defendants contend that the Railroads failed to state a claim under 42 U.S.C. § 1983 against either the ICC or its individual Commissioners. Defs.' Mot. Summ. J. at 4-5. As a formal matter of law, it is true that the ICC should not be a named defendant. The Eleventh Amendment immunizes the States from suit in federal court for money damages absent unequivocal State consent or valid congressional authorization that itself relies on a prevailing constitutional provision. *Green v. Mansour*, 474 U.S. 64, 68 (1985); *Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*, 603 F.3d 365, 374 (7th Cir. 2010). This sovereign immunity extends to state agencies—like the ICC—too, because a state agency is simply a component of the State. *Council 31 of the Am. Fed'n of State, Cty. & Mun. Employees, AFL-CIO v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012). So the ICC must be dismissed as a named party on all counts.

On the ICC Commissioners, it is true that claims against government officials in their official capacities also run into the sovereign-immunity barrier because "[a] suit against a state official in his … official capacity is a suit against the state." *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000). But there is an exception to sovereign immunity: the *Ex parte Young* doctrine establishes that a plaintiff may sue government officials, even in their official capacities, in order to obtain prospective relief

11

(not monetary damages) from an ongoing violation of federal law. *Indiana Prot. & Advocacy Servs.*, 603 F.3d at 371; *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989). This legal fiction rests on the premise that a suit against state officials for prospective relief is not deemed to be against the State because a State cannot authorize its officials to violate federal law. *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 269-70 (1997). Prospective relief—here in the form of a declaratory judgment—is precisely what the Railroads seek from the ICC Commissioners in their official capacity, so this is no bar.

On the applicable cause of action, the Railroads' only response to the challenge to the 42 U.S.C. § 1983 claim is that the claim does not matter in light of the declaratory-judgment claim. R. 69 at 13 n.2. That seems like another way of saying (in a footnote) that the Railroads are giving up on this claim, because that is not a substantive argument for its survival. Invoking Section 1983 to assert a preemption claim is not a self-evident exercise, so the Court will not fashion a response for the Railroads. The Section 1983 claim is dismissed with prejudice.

## IV. Conclusion

The Railroads' motion for summary judgment is granted: the Court declares that the Crew Size Law, Public Act 101-0294, is preempted by the FRA Withdrawal Order. The ICC's and the Unions' cross-motions for summary judgment are denied,

except that the § 1983 claim is dismissed with prejudice. Final judgment will be entered. The status hearing of October 2, 2020, is vacated.

ENTERED:

Honorable Edmond E. Chang
United States District Judge

DATE: September 30, 2020

13