UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INDIANA RAIL ROAD COMPANY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:19-CV-06466 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| ILLINOIS COMMERCE COMMISSION, *et al.* | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, *et al.*, | ) | |
| | ) | |
| Intervenor-Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In August 2019, Illinois enacted a law that requires a minimum of two crew members in order to operate a freight train. Public Act 101-0294. A railroad and two railroad organizations filed this lawsuit against the Illinois Commerce Commission (known by its acronym, the ICC), which is the state agency that would otherwise enforce this minimum crew-size requirement. The Indiana Rail Road Company, the Association of American Railroads, and the American Short Line and Regional Railroad Association (together, referred to as the Railroads) contended that at least three federal laws preempt the Illinois law. R. 1, Compl. On the opposite side from the railroad industry, two Unions successfully sought to intervene to defend the state law

(referred to as the Crew Size Law for convenience's sake). R. 33, Int. Order.[1] All parties moved for summary judgment. *See* R. 49, Pls.' Mot. Summ. J.; R. 58, Ints.' Mot. Summ. J.; R. 66, Defs.' Mot. Summ. J.

This is this Court's second attempt to resolve this motion. The Court initially granted the Railroads' motion on the grounds that the Crew Size Law was preempted by the Federal Railroad Safety Act (FRSA). R. 96. But after a trip to the Seventh Circuit and a recent decision from the Ninth Circuit, both of which will be explained further below, the case is back before this Court for consideration on different grounds. For the reasons discussed in this Opinion, the Railroads' motion for summary judgment is once again granted, and the Defendants' motion is denied.

## I. Background

The facts narrated here are undisputed unless otherwise noted. In deciding cross-motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). So, when the Court evaluates the ICC's and the Unions' summary judgment motions, the Railroads get the benefit of reasonable inferences; conversely, when evaluating the Railroads' filing, the Court gives the ICC and the Unions the benefit of the doubt.

The Indiana Rail Road Company operates a 250-mile regional railroad in central Illinois and southwest Indiana. R. 50, Pls.' Stmt. Fact (PSOF) ¶ 1; R. 65, Defs.'

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation. The Court has federal-question subject matter jurisdiction under 28 U.S.C. § 1331 as well as supplemental jurisdiction over Plaintiffs' state-law claim pursuant to 28 U.S.C. § 1367.

Stmt. Fact (DSOF) ¶ 1. It is a member of two railroad associations: the Association of American Railroads and the American Short Line and Regional Railroad Association. PSOF ¶¶ 7–9; R. 56, Int. Defs.' Counterstatement (ISOF) ¶¶ 7–8; DSOF ¶¶ 3–5. Back in March 2016, the Federal Railroad Administration (known by its acronym, the FRA) formally gave notice of proposed rules that would affect Indiana Rail Road as well as members of the two associations. FRA, *Train Crew Staffing*, 81 Fed. Reg. 13,918 (Mar. 15, 2016); PSOF ¶ 15; R. 64, Defs.' Resp. PSOF (DRSOF) ¶ 15. Specifically, the FRA issued a Notice of Proposed Rulemaking on "Train Crew Staffing," proposing regulations for minimum crew sizes for trains depending on the trains' type of operations. *Id.* In theory, the rulemaking should have finished up in 12 months, as required by the Federal Railroad Safety Act, 49 U.S.C. § 20103(b), and the FRA's own regulations, 49 C.F.R. § 211.13. But that did not happen, and instead the FRA ended up withdrawing the notice—three years later in May 2019. FRA, *Train Crew Staffing*, 84 Fed. Reg. 24,735, 24,741 (May 29, 2019) (FRA Withdrawal Order); PSOF ¶ 16; DRSOF ¶ 16. In withdrawing the proposed regulation, the FRA announced "that no regulation of train crew staffing is necessary or appropriate at this time and [the FRA] intends for the withdrawal to preempt all state laws attempting to regulate train crew staffing in any manner." FRA Withdrawal Order at 24,741; PSOF ¶ 16; DRSOF ¶ 16; ISOF ¶ 16.

As it happens, on May 21, 2019—just days before the FRA's withdrawal of the proposed rule-making—the Illinois General Assembly amended the Illinois Vehicle Code to mandate a minimum crew size of two: "No rail carrier shall operate or cause

3

to operate a train or light engine used in connection with the movement of freight unless it has an operating crew of at least 2 individuals." P.A. 101-0294, § 2d; DSOF ¶¶ 13–14; R. 70, Pls.' Resp. to DSOF (PRSOF) ¶¶ 13–14. The asserted purpose of this law, which the parties call the Crew Size Law, was to "enhance public safety by establishing a minimum freight train operating crew size to address the transportation of all freight." Crew Size Law, § 1. Following the May 21, 2019 enactment of the law, the Governor signed the Crew Size Law on August 9, 2019. DSOF ¶ 14; PRSOF ¶ 14.

A month after the Governor signed the law, the Indiana Rail Road brought this lawsuit against the Illinois Commerce Commission seeking declaratory and injunctive relief on grounds that: (1) the Crew Size Law is preempted by the Federal Railroad Safety Act; (2) the law is preempted by a federal statute known as the "3R Act"; (3) the law is preempted by the ICC Termination Act; and (4) the law is unenforceable under its own sunset provision. R. 1, Compl. Although the Crew Size Law was to take effect on January 1, 2020, the Illinois Commerce Commission agreed to stay its enforcement pending the resolution of this case. PSOF ¶¶ 18, 19; DRSOF ¶¶ 18, 19. After giving the parties a chance to confer on whether any discovery was needed (the answer was no), R. 33, the parties and the Intervenor-Unions filed cross-motions for summary judgment.

In late 2020, this Court held that the Crew Size Law was preempted by the Federal Railroad Safety Act, because the Federal Railroad Administration had issued a Withdrawal Order in 2019 announcing that one-person crews were permitted, and the Order was presumptively valid. R. 96, Mem. Op. and Order at 5–11. Indeed, as

4

the Opinion explained, only federal Circuit Courts have jurisdiction to consider the validity of the Withdrawal Order, and a challenge was underway in the Ninth Circuit. *Id.* at 8–9 (citing 28 U.S.C. § 2342(7)). The Court thus granted the Railroads' motion for summary judgment. *Id.*

But early in 2021, the Ninth Circuit Court of Appeals vacated the Withdrawal Order, holding that the Federal Railroad Administration violated the notice-and-comment requirements of the Administrative Procedure Act in issuing the Order, and that the Order was arbitrary and capricious. *Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers v. Fed. R.R. Admin.*, 988 F.3d 1170, 1184–85 (9th Cir. 2021). Meanwhile, this Illinois case was, at that time, on appeal to the Seventh Circuit. The State Defendants asked this Court to indicate whether it would vacate the judgment previously entered in the Railroads' favor if the case were remanded. R. 115. This Court indicated that it would vacate the order on remand, and simultaneously set a briefing schedule for supplemental briefs on the assumption that the remand would take place. R. 119, Minute Entry. The Seventh Circuit remanded the case in July. R. 121, Seventh Circuit Order. The parties have submitted supplementary briefing in support of their positions. R. 120, Defs.' Supp. Br; R. 123, Pls'. Supp. Br.; R. 129, Ints'. Supp Br.; R. 130, Defs'. Supp. Resp.; R. 131, Pls'. Supp. Reply.

## II. Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

Because this Court originally held that the Crew Size Law was preempted by the Federal Railroad Safety Act (FRSA), the Court declined to decide whether the Crew Size Law was also invalid for the other reasons put forward by the Railroads. Mem. Op. and Order at 5. Now that the Ninth Circuit has held that the Withdrawal Order was invalid, meaning the FRSA does not preempt the Crew Size Law, it is time to turn to the Railroads' other arguments. As an initial matter, the Railroads' claim under 42 U.S.C. § 1983 remains dismissed; the Court previously granted the

6

Defendants summary judgment on that claim, and the Plaintiffs have not challenged that part of the Order. Mem. Op. and Order at 12. The Court also agreed with the Defendants that the ICC was not a properly named Defendant because of Eleventh Amendment sovereign immunity. *Id.* at 11. But the ICC Commissioners (in their official capacity) were (and still are) appropriate Defendants under the *Ex parte Young* doctrine, so they remain in the case as the State Defendants. *Id.* at 11–12.

The Railroads contend that the Crew Size Law is preempted by the Regional Rail Reorganization Act (also known as the 3R Act), and by the ICC Termination Act. Pls'. Mot. Summ. J. at 1–2. The Railroads also argue that the Law is unenforceable under the terms of its own sunset provision, *id.* at 2, but this is just a repackaging of the other arguments and does not require independent analysis.

This Court agrees that the 3R Act preempts the Crew Size Law. Because the summary judgment motions can be decided on this basis, there is no need to decide whether the ICC Termination Act also preempts the Crew Size Law. The Court did consider addressing the ICC Termination Act, as well, for completeness's sake. But it is less than crystal clear whether the ICC Termination Act preempts the Crew Size Law, and the Court of Appeals can address that question of law in the first instance if necessary. If any party appeals this decision, the parties can present their arguments under the ICC Termination Act to the Seventh Circuit directly, whether in defense of the judgment or to challenge it.

Congress passed the 3R Act in 1974 to address a railway crisis in the Northeast and Midwest. *Blanchette v. Connecticut General Ins. Corps.,* 419 U.S. 102, 108–09

7

(1974). The 3R Act was designed to reorganize the railroads in those regions, bringing them under the control of a new government corporation that would create a plan to turn them into an "economically viable railway system." *Id.* at 109–17; 45 U.S.C. § 701(b)(2). The 3R Act included some prescriptions for all states in how they would deal with that new corporation, and some prescriptions specific to the region most affected by the railway crisis the Act sought to remedy. That "Region" was defined to include 17 states, including Illinois, as well as the District of Columbia and some "portions of contiguous States." 45 U.S.C. § 702(17). The Regional Rail Reorganization Act includes an express preemption clause against crew-size requirements as follows:

> No State may adopt or continue in force any law, rule, regulation, order, or standard requiring the Corporation *to employ any specified number of persons* to perform any particular task, function, or operation, … and no State in the Region may adopt or continue in force any such law, rule, regulation, order, or standard with respect to any railroad in the Region.

45 U.S.C. § 797j (emphasis added). The Railroads in this case contend that Illinois, as a "State in the Region" covered by the 3R Act, is prohibited under Section 797j from adopting a law that mandates a specific crew size. Pls'. Mot. Summ. J. at 10–12. This Court agrees.

The preemption language of the 3R Act is too specific to ignore. "The Supremacy Clause of the United States Constitution invalidates state laws that interfere with, or are contrary to, federal law." *Nelson v. Great Lakes Educ. Loan Servs., Inc.*,

8

928 F.3d 639, 646 (7th Cir. 2019) (cleaned up).[2] In cases of express preemption like this one, where "Congress clearly declares its intention to preempt state law," courts must "identify the domain expressly pre-empted" by the statutory language. *Id.* at 646–47 (cleaned up). Here, the 3R Act forbids states in the Region to adopt laws or rules requiring any railroad in the Region to staff crews of a specified size for "any particular task, function, or operation." 45 U.S.C. § 797j. Illinois's Crew Size Law states: "No rail carrier shall operate or cause to operate a train or light engine used in connection with the movement of freight unless it has an operating crew of at least 2 individuals." P.A. 101-0294, § 2d; DSOF ¶¶ 13–14; R. 70, Pls.' Resp. to DSOF ¶¶ 13–14. Illinois wants to mandate a crew size of two to perform the task, function or operation of moving freight with a train or light engine; this is exactly what the 3R Act prohibits.

Although the Defendants raise several creative arguments, they cannot eliminate this clear conflict. Both the State Defendants and the Unions rely heavily on a case from the 3R Act's special court that held that the 3R Act did not preempt laws about crew sizes when those laws were concerned exclusively with safety. *Norfolk & W. Ry. Co. v. Pub. Serv. Comm'n of West Virginia,* 858 F. Supp. 1213, 1217 (Reg'l Rail Reorg. Ct 1994). The State Defendants also unearthed a handful of additional, even older cases from the special court, in which the special court focused on the economic regulatory purposes of the 3R Act (although it found, in each case, that the minimum

---

[2]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

crew size law at issue was preempted). Defs' Mot. Summ. J. at 8–9.[3] None of these cases are binding precedent. And given the plain language of the statute, the reasoning of the Special Court, when it suggested that a safety-based regulation of crew sizes might not be preempted by the 3R Act, is not especially persuasive. As the Railroads point out, the Supreme Court has increasingly embraced a textualist jurisprudence that would not support the reasoning of the special court in *Norfolk & W. Ry. Co. See, e.g.*, *Puerto Rico v. Franklin California Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016). Nor does it appear that the Special Court ever actually upheld a safety-based regulation of crew size after hinting that this might be possible—at least, the defense has not pointed to any such case.

The Court understands the Defendants' point that the 3R Act is concerned mostly with economic matters, as discussed in the special court cases and even in the "purposes" section of the statue itself. 45 U.S.C. § 702. It is true that the 3R Act is not *generally* concerned with safety matters. But on the *specific* issue of crew sizes, the

---

[3]Overall, the additional Special Court cases do more to hurt the defense than help it. In fact, in all three cases the Special Court found that state analogues to Illinois's Crew Size Law *were* preempted by the 3R Act, as the Railroads pointed out in their briefs. Pls'. Mot. Summ. J. at 11–12; Pls'. Supp. Br. at 4. In one case the court noted, "The starting point for determining whether a federal statute preempts a state law is to ascertain Congress' intent in enacting the federal statute at issue. It is a fundamental rule of statutory construction that one is to look first at the language of the statute. In this case, it is hardly necessary to do more." *Norfolk & W. Ry. Co. v. Pub. Util. Comm'n of Ohio,* 582 F. Supp. 1552, 1556 (Reg'l Rail Reorg. Ct. 1984) (cleaned up). In another, the Court held that Indiana's version of a Crew Size Law was preempted by the 3R Act, noting that the state's justification for its law was both economic and safety-based, and further noting: "More important, whatever the purposes of the Indiana statute, *Congress* evidently saw no legitimate safety reasons for Conrail to employ the numbers of firemen and brakemen required under Indiana law." *Keeler v. Consol. Rail Corp.*, 582 F. Supp. 1546, 1550 (Reg'l Rail Reorg. Ct. 1984) (emphasis in original). *See also Boettjer v. Chesapeake & Ohio Ry. Co.*, 612 F. Supp. 1207, 1208 (Reg'l Rail Reorg. Ct. 1985) (reaffirming that: "The language of Section 711 makes it unequivocally clear that Congress expressly intended to preempt state minimum crew laws such as Indiana's.").

10

statute is clear. The prohibition on certain states passing laws related to crew size doubtless has some implications for safety, but this can be said of many economically motivated rules. Matters of economics and safety cannot always be kept completely separate—most safety initiatives cost some money, and many money-saving initiatives will have some implications for safety.

Some appellate courts have noted generally that the FRSA governs safety in the railways, while the ICC Termination Act governs economic matters—but those cases do not discuss the 3R Act, and so cannot illuminate the question of whether the 3R Act can preempt crew size regulations. *See Tyrrell v. Norfolk S. Ry. Co.,* 248 F. 3d 517, 522–23 (6th Cir. 2001); *Elam v. Kansas City S. Ry. Co.*, 635 F. 3d 796, 806–08 (5th Cir. 2011); *Burlington N. & Santa Fe Ry. Co. v. Doyle*, 186 F.3d 790 (7th Cir. 1999). And those general statements do not provide a specific holding to insulate the Crew Size Law from the preemption clause when the Law directly contradicts the 3R Act, merely because the Law's broadly stated purpose is to promote safety.[4]

The Unions also argue that the 3R Act should not be applied to Illinois because Conrail (the government corporation it created) no longer operates here. Ints.' Mot.

---

[4]The defense points out that several states do have crew size laws, and it is puzzling that three of these states are within the Region covered by the 3R Act: Massachusetts, New Jersey, and West Virginia. Defs'. Mot. Summ. J. at 10; 45 U.S.C. § 702(17). It appears that the West Virginia statute cited is the same one the special court held was preempted in *Norfolk & W. Ry. Co. v. Pub. Serv. Comm'n of West Virginia*, 858 F. Supp. 1213, 1217 (Reg'l Rail Reorg. Ct. 1994). As for the Massachusetts and New Jersey laws, both create a mechanism to require a railroad company to staff a two-person crew after the government has made specific safety findings and/or had a hearing with notice to the parties. Mass. Gen. Laws Ann. Ch. 160 § 185; N.J. Stat. Ann. § 48:12-155. That might be the key, litigation-preventing difference from the Illinois statute, which prohibits all one-person crews. In any event, the Defendants have not pointed to any cases or other authorities to explain how those statutes survive in spite of the 3R Act, and the Court has not found any, either.

Summ. J. at 10–11. But that argument too is unpersuasive. The Unions invite the Court to find that the purpose of the 3R Act no longer supports its application to the Crew Size Law, following the reasoning that led the Supreme Court to invalidate portions of the Voting Rights Act in *Shelby County, Ala. v. Holder*, 570 U.S. 529, 557 (2013). In *Shelby County*, the Supreme Court held that the formula used to require certain States to seek preclearance for changes in voting procedures no longer had a constitutional basis. *Id.* at 557. But that mode of analysis has no application here at all. The Defendants do not seriously offer a comprehensive factual presentation that shows that the 3R Act is essentially now a dead letter because there is no constitutional basis for it. The Act defined a region that includes Illinois, and set out certain restrictions on how states in that region can regulate railroads. Illinois must abide by those restrictions, and in passing the Crew Size Law, it failed to do so.

## II. Conclusion

The Railroads' motion for summary judgment is granted: the Court declares that the Crew Size Law, Public Act 101-0294, is preempted by the 3R Act. The ICC's and the Unions' cross-motions for summary judgment are denied. Final judgment will be entered. The tracking status hearing of January 14, 2022, is vacated.

ENTERED:

*Edmond E. Chang*
Honorable Edmond E. Chang
United States District Judge

DATE: December 21, 2021